Filed 8/23/22  Arora v. Singh CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SURINDERPAL S. ARORA et al.,<br><br>    Plaintiffs, Cross-defendants and Appellants,<br><br>    v.<br><br>DALJEET SINGH et al.,<br><br>    Defendants, Cross-complainants and Respondents. | B310707<br><br>(Los Angeles County Super. Ct. No. 18STCV10316) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County.  Randolph M. Hammock, Judge.  Order reversed and judgment vacated.

Smith Law Firm and Craig R. Smith for Plaintiffs, Cross-defendants and Appellants.

Attlesey|Storm, Keith A. Attlesey and Marc W. Thomas for Defendants, Cross-complainants and Respondents.

_____

Plaintiffs and appellants Surinderpal S. Arora and his wife, Sharanpreet K. Arora (collectively the Aroras) appeal from a judgment entered in favor of defendants and respondents Daljeet Singh (Singh) and his wife, Gurpreet Bindra (Bindra), following their successful motion to enforce a settlement agreement. (Code Civ. Proc., § 664.6.)[1]

The Aroras argue that they revoked their offer to settle before Singh and Bindra accepted it, rendering the purported settlement agreement unenforceable. We agree. The order is reversed and the judgment is vacated.

## FACTS AND PROCEDURAL BACKGROUND

In 2007, the parties entered into a partnership to manage residential properties. In 2018, Singh and Bindra told Surinderpal[2] that they wanted to sell their interest in the partnership. This turned out to be the opening salvo in what would become a full-blown family feud, culminating in dueling lawsuits.

After two years of litigation, the parties opened settlement talks. In these talks, the Aroras were represented by Craig Smith (Smith); Singh and Bindra were represented by Suoo Lee.

On March 10, 2020, Lee drafted a written settlement agreement and sent it to the Aroras. On March 14, 2020, Smith sent Singh, Bindra, and Lee a redlined version of the agreement. The revised agreement contained several changes, including a provision allowing the Aroras to inspect one of the partnership's

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     Because the Aroras share a surname, we refer to Surinderpal by his first name for clarity. No disrespect is intended.

2

properties on March 16, 2020. The Aroras also sent a clean copy of the revised agreement bearing their signatures.

At 3:13 p.m. on March 15, 2020, Singh and Bindra signed the revised agreement and e-mailed it to Lee.

At 11:53 p.m. on March 15, 2020, Surinderpal e-mailed Singh, Bindra, and Lee. He alleged that the property inspection had revealed significant water and electrical damage, that he "disapprove[d] of the property condition" and that he would "thus withdraw the agreement that was presented."

At 9:40 a.m. on March 16, 2020, Lee e-mailed the signed agreement to the Aroras and Smith.

On March 17, 2020, Smith e-mailed Lee, writing, "[a]s you know, [Surinderpal] withdrew his agreement and consent to the stipulation following the inspection and his discovery of significant damage to the property . . . [Surinderpal's] withdrawal of his agreement and consent preceded your clients' signatures to the stipulation. As a result, and for the moment there is no agreement." Smith added that the Aroras were "willing to proceed on the agreement as stated" if Singh and Bindra could resolve the Aroras' issues.

On March 18, 2020, Lee notified Smith that Singh and Bindra would arrange for some repairs to the property, and asked Smith to confirm that the Aroras would "comply with the terms of the stipulation for settlement."

On March 19, 2020, Smith responded with questions about the repairs and a request for further documentation. Lee replied that she would "take [Smith's] response as confirmation that [his clients] intend to comply with the stipulation" unless he corrected her.

3

On April 9, 2020, Lee asked Smith whether the Aroras had paid property taxes for one of the partnership's properties, as required by the settlement. Smith then asked Lee to "[p]lease stop referring to the stipulation as something binding on the parties. It is not."

On June 9, 2020, Singh and Bindra moved to enforce the purported settlement agreement pursuant to section 664.6.

On September 28, 2020, the trial court granted the motion over the Aroras' objections. It rejected the Aroras' argument that they had revoked their offer prior to Singh and Bindra's acceptance, finding that this argument was "belied by the fact that [the Aroras] signed the agreement along with the other parties." It concluded that "the Stipulation for Settlement signed by all parties was in fact reached in this matter *prior* to the attempts by [the Aroras] to either repudiate it or to 'withdraw' [their] prior offer."

On January 21, 2021, the trial court entered judgment to enforce the terms of the purported settlement agreement. The Aroras timely appealed.[3]

## DISCUSSION

Section 664.6 provides a summary procedure for specifically enforcing a settlement agreement that meets certain statutory requirements, including, as relevant here, a written agreement "signed by the parties outside of the presence of the court." (§ 664.6.)

---

[3] Singh and Bindra filed a perfunctory respondent's brief in which they "knowingly and voluntarily elect to forego a substantive brief," understanding "that determination of this matter . . . shall be made on [the Aroras'] Opening Brief, and the record as submitted by the Aroras."

4

When ruling on a motion to enforce a settlement agreement under section 664.6, a trial court must first determine whether the parties entered into a valid and binding settlement of the case. (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994.) "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 (*Weddington*).) The validity of a settlement agreement "is thus 'judged by the same legal principles applicable to contracts generally.' [Citation.]" (*Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1585.)

Where, as here, the underlying facts are undisputed, we review the trial court's determinations about the validity of a settlement agreement de novo. (*Weddington*, *supra*, 60 Cal.App.4th at p. 810.)

The Aroras' appeal is a law school hypothetical come to life, illustrating one of the most basic tenets of contract law: the power of acceptance. "'An essential element of any contract is the consent of the parties, or mutual assent.' [Citations.]" (*Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 967; see also Civ. Code, § 1550.) Mutual assent typically manifests when one party extends an offer and the other party accepts it, and thus "a contract is formed at the time and place the offeree accepts and communicates his or her acceptance to the offeror." (*Ledbetter Erection Corp. v. Workers' Comp. Appeals Bd.* (1984) 156 Cal.App.3d 1097, 1103.)

Two additional precepts are relevant to the Aroras' appeal. First, because mutual assent "cannot exist unless the parties 'agree upon the same thing in the same sense'" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208), the ""[t]erms

5

proposed in an offer must be met exactly, precisely, and unequivocally for its acceptance to result in the formation of a binding contract [citations]; . . .”’” (*J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 13, fn. 10.) “‘[T]he addition of any change or limitation, is tantamount to a rejection of the original offer and the making of a counteroffer. . . .’” (*Landberg v. Landberg* (1972) 24 Cal.App.3d 742, 752.) A counteroffer “is a new proposal and, if not accepted by the original offeror, amounts to nothing. [Citation.]” (*Apablasa v. Merritt & Co.* (1959) 176 Cal.App.2d 719, 726 (*Apablasa*).)

Second, neither an offer nor a counteroffer remains open indefinitely. In general, “an offer [or counteroffer] may be revoked [at] any time before acceptance.” (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1020; Civ. Code, § 1586.) Revocation terminates “‘[a]n offeree’s power of acceptance,’” rendering any contract purportedly based on that offer void. (*Varney Entertainment Group, Inc. v. Avon Plastics, Inc.* (2021) 61 Cal.App.5th 222, 235.)

Applying these principles to the case before us, we must conclude that the Aroras never entered into an enforceable settlement agreement with Singh and Bindra. Singh and Bindra made an initial settlement offer on March 10, 2020. The Aroras responded four days later with a revised offer which, although substantially similar to the original, included several new or altered provisions. This created a counteroffer, which Singh and Bindra needed to accept in order to form a valid agreement.

Singh and Bindra signed the revised offer on March 15, 2020, but mere signatures do not constitute acceptance. As stated above, an offeree must communicate his or her acceptance to the offeror before a contract can be formed. While Singh and

6

Bindra e-mailed a signed agreement to *their* attorney on the afternoon of March 15, 2020, it was not transmitted to the Aroras or the Aroras' attorney until the morning of March 16, 2020—nearly 10 hours after the Aroras sent an e-mail telling Singh, Bindra, and their attorney that the counteroffer was off the table. None of the parties' communications after this exchange indicate that the Aroras ever reextended their offer.

Because Singh and Bindra did not communicate their acceptance of the Aroras' counteroffer prior to revocation, the counteroffer never became a binding settlement agreement. In the words of the *Apablasa* court, it "amounts to nothing." (*Apablasa, supra,* 176 Cal.App.2d at p. 726.) As such, it cannot be enforced under section 664.6.

In light of this conclusion, we need not reach the Aroras' other arguments.

## DISPOSITION

The order enforcing the purported settlement pursuant to section 664.6 is reversed and the judgment is vacated.  The Aroras are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P.J.
LUI


_____, J.
HOFFSTADT