[No. D012074. Fourth Dist., Div. One. Jan. 15, 1992.]

STEVEN SKULNICK et al., Plaintiffs, v.
ROBERTS EXPRESS, INC., et al., Defendants and Appellants;
ALBERT L. MACKEY et al., Defendants and Respondents.

[No. D012110. Fourth Dist., Div. One. Jan. 15, 1992.]

LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff, v.
ROBERTS EXPRESS, INC., et al., Defendants and Appellants;
ALBERT L. MACKEY et al., Defendants and Respondents.

## COUNSEL

Murtaugh, Miller, Meyer & Nelson, Lana Feldman and Richard E. Meyer for Defendants and Appellants.

Gibson & Kennerson, Paul R. Kennerson and John K. Grant for Defendants and Respondents.

Patrick A. McCormick, Jr., and Linda B. Zappe as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

NARES, J.—Roberts Express, Inc. (Roberts), and Mediquik Express, Inc. (Mediquik), appeal a judgment on a stipulated settlement entered pursuant to Code of Civil Procedure[1] section 664.6.[2] The judgment includes an order forbidding the settling parties from asserting their indemnification rights.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The court entered identical judgments pursuant to section 664.6 in two separate actions filed with the superior court. Roberts and Mediquik, defendants in both actions, appeal from both judgments.

Roberts and Mediquik argue they never agreed to waive their indemnification rights as part of any settlement, and contend the court therefore entered an improper judgment. However, there is substantial evidence in the record that Roberts and Mediquik stipulated to a settlement in which they waived their indemnification rights. Accordingly, we affirm.

## FACTS AND PROCEDURE

In December 1986, a traffic accident occurred between two tractor-trailer rigs. Respondent Albert L. Mackey (Mackey), the driver of one of the rigs, was pulling trailers leased by Burlington Air Express (Burlington) and Mediquik, a division of Roberts. Mackey lost control of his vehicle, which overturned. The other rig, driven by Stephen Skulnick (Skulnick), struck Mackey's disabled vehicle. Skulnick suffered numerous injuries from the accident and brought suit in San Diego Superior Court against Mackey, Roberts, Mediquik, and Burlington.[3]

The court first determined that Roberts and Mediquik were Mackey's statutory employers and were therefore vicariously liable to Skulnick for Mackey's negligent conduct. In August 1989, the court then ordered all of the defendants and their insurance representatives to attend a settlement conference before Retired Associate Justice Gerald J. Lewis.[4] At the initial conference Mackey offered the limits of his insurance policy to settle with Skulnick, but only if such a settlement would resolve all other claims against him.

By October 1989, after repeated conferences, the parties orally agreed upon terms for a settlement.[5] In November 1989, the parties appeared before the court to place the settlement on the record. The settlement called for Mackey's insurer to pay Skulnick the $750,000 proceeds from Mackey's combined single limit insurance policy, contingent upon a finding that the offer was in good faith. Skulnick was also to receive $2.1 million from Roberts and Mediquik and $25,000 from Burlington. The settlement did not mention the indemnification rights of the parties, nor did any party raise the

---

[3]Liberty Mutual, the insurer of Skulnick's employer, also brought suit in San Diego Superior Court seeking subrogation from Burlington, Mackey, Roberts, and Mediquik for money it paid to cover its insured's property damage.

[4]The court granted Justice Lewis the authority and full power of an active judge for his supervision of the settlement conference.

[5]The parties agreed that Mackey's attorney would prepare a settlement document to be signed by all parties. Neither Roberts nor Mediquik ever signed such a document.

issue of indemnification during the judicially supervised settlement conferences.[6]

After the settlement terms were placed on the record, the parties agreed that those terms represented the settlement reached at the conference. However, counsel for Roberts and Mediquik stated, "I cannot at this time stipulate to the good faith settlement on behalf of any of the other defendants."[7] Mackey immediately filed a motion for the court to determine the good faith of the settlement pursuant to section 877.6.[8] The court continued Mackey's motion for a determination of good faith because Roberts and Mediquik produced evidence suggesting that Mackey owned assets, other than his insurance policy, which he could contribute to the settlement.[9] Roberts and Mediquik also stated they intended to preserve their indemnification rights against Mackey and did not bargain away those rights as part of the settlement.

Mackey, believing the settlement encompassed the forfeiture of all indemnification rights, filed a motion to compel or confirm the settlement and enter judgment pursuant to section 664.6.[10] The court found that Roberts and Mediquik, if they intended to preserve their indemnification rights, should have done so when the settlement was placed on the record, and not "wait in the bushes and jump at the proper time by attacking somebody." Accordingly, the court granted Mackey's section 664.6 motion and entered judgment against all others who might seek indemnification from Mackey.

---

[6]After the conclusion of the final settlement conference counsel for Roberts and Mediquik did express an interest in seeking indemnification from Burlington. However, Roberts and Mediquik did not raise the issue of seeking indemnification from Mackey until after the settlement was placed on the record.

[7]However, Roberts and Mediquik agreed to go forward with their plans to pay Skulnick $2.1 million.

[8]In part, section 877.6 states: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

[9]Roberts and Mediquik expressed their need to conduct discovery of Mackey's financial assets. Instead, Mackey had the section 877.6 motion continued until after the section 664.6 hearing. After the section 664.6 motion was granted and the settlement confirmed, Mackey had the section 877.6 motion taken off calendar.

[10]Section 664.6 states: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

## Discussion

■ Section 664.6 permits a court to enter judgment pursuant to the terms of a settlement if the parties stipulate orally before the court or in writing to settle all or part of a case. (*Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 991 [203 Cal.Rptr. 356].) Roberts and Mediquik contend that the court improperly granted Mackey's section 664.6 motion because they never stipulated to the settlement. However, a party's stipulation to the terms of an agreement in open court will suffice as a section 664.6 stipulation. (*Gorman* v. *Holte* (1985) 164 Cal.App.3d 984, 987 [211 Cal.Rptr. 34].) The requirement that any oral stipulation be made at a judicially supervised proceeding ensures that "the intent of the parties when they verbalized the settlement is [not] vulnerable to conflicting interpretations." (*City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 762 [234 Cal.Rptr. 353].)

■ Here, the parties appeared before the court to place the terms for the settlement on the record. Counsel for Roberts and Mediquik, on the record, in open court, agreed to the stated terms of the settlement. Pursuant to section 664.6, this stipulation satisfies the conditions for the court's entry of a judgment.[11] The judgment must then reflect and enforce the terms of the settlement. There is no dispute here as to the expressed terms of the settlement, only as to the implied terms. Roberts and Mediquik argue they never waived their indemnification rights as part of the settlement. However, the court's judgment reflects the finding that the settlement encompassed the waiver of those rights, barring Roberts and Mediquik from seeking indemnification from Mackey.

■ A trial court, when ruling on a section 664.6 motion, acts as a trier of fact. (*Fiore* v. *Alvord* (1985) 182 Cal.App.3d 561, 565 [221 Cal.Rptr. 400].) Section 664.6's "express authorization for trial courts to determine whether a settlement has occurred is an implicit authorization for the trial court to interpret the terms and conditions to settlement." (*Id.* at p. 566.) The proper standard of review, therefore, is whether the trial court's ruling that the settlement incorporated forfeiture of indemnification rights is supported by substantial evidence. (*Id.* at p. 565.)

A trial court acting upon a motion under section 664.6 may determine the motion upon declarations alone. (*Corkland* v. *Boscoe, supra,* 156 Cal.App.3d at p. 994.) ■ Here, the record includes the declarations of five attorneys who were present through most, if not all, of the settlement conferences. These declarations uniformly show the settling parties understood that

---

[11]Because we find a valid oral stipulation before the court, we need not address Roberts's and Mediquik's argument that the settlement judge was improperly appointed, making any stipulation before him invalid.

the waiver of indemnification rights was a condition to any settlement. In support of the section 664.6 motion Mackey's counsel stated, "I have made it clear to all parties . . . that all claims against Mr. Mackey . . . had to be completely, finally, fully, and forever resolved before any payment could be made on behalf of my clients." Skulnick's counsel recalled, "[P]ayment of settlement on behalf of [Mackey] was conditioned upon a settlement of all claims against Mr. Mackey. . . . [I]t was my understanding that we were dealing with a global settlement, meaning that all claims against all parties were going to be forever resolved." Even the attorney for Roberts and Mediquik stated, "I remember [Mackey's counsel] mentioning that the offer of [] money on behalf of her client was conditioned upon the entire matter being settled." Each declaration also states that at no time during any of the settlement conferences did any party raise the prospect of seeking indemnification from Mackey.[12]

The parties' declarations also support the trial court's determination that Roberts and Mediquik should be equitably estopped from asserting their indemnification rights. "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) ■ This doctrine of equitable estoppel has four elements: (1) The party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

■ The operative material fact here is that Roberts and Mediquik remained silent at the initial settlement conference as to their intent to retain indemnification rights against Mackey. Mackey openly declared that his participation in a settlement would be contingent upon the release of all claims against him. Roberts and Mediquik did not dispute Mackey's contingency; they remained silent. Because Roberts and Mediquik did not reject

---

[12]Pursuant to Evidence Code section 703.5, Justice Lewis's declaration describing the settlement proceedings could not be properly considered by the trial court or this court. Section 703.5 states:

"No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings . . . ."

Mackey's precondition, the other parties reasonably believed that Roberts and Mediquik were waiving their indemnification rights. Accordingly, the parties necessarily spent a considerable amount of time and money to achieve a global settlement of all claims.

 The object of equitable estoppel is to "prevent a person from asserting a right which has come into existence by contract, statute or other rule of law where, because of his conduct, silence or omission, it would be unconscionable to allow him to do so." (*Brown* v. *Brown* (1969) 274 Cal.App.2d 178, 188 [82 Cal.Rptr. 238].) An estoppel may arise from silence where there is a duty to speak. (*Lix* v. *Edwards* (1978) 82 Cal.App.3d. 573, 580 [147 Cal.Rptr. 294]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 179, p. 861.) If Roberts and Mediquik intended to preserve their indemnification rights against Mackey, they also had a duty to affirm those rights upon Mackey's stated precondition to settlement. By their silence, Roberts and Mediquik induced Mackey and the other parties to continue with numerous settlement conferences. Accordingly, the evidence clearly supports the trial court's determination that equity bars Roberts and Mediquik from seeking indemnification in this matter because the assertion of those rights would be unconscionable.

Roberts and Mediquik declare they never expressly waived their indemnification rights. They believe their inability to stipulate to a good faith finding of Mackey's settlement offer demonstrates their intention to preserve their indemnification rights against Mackey. However, the trial court found that Roberts's and Mediquik's inability to stipulate to Mackey's good faith did not equal an express or implied preservation of indemnification rights which would frustrate the entire settlement. The declarations of the settling parties constitute substantial evidence supporting this finding and the trial court's finding that the settlement prohibited Roberts and Mediquik from seeking indemnification from Mackey.

The trial court's finding is also supported by public policy. Public policy strongly discourages litigation and encourages settlement. (*Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 236 [132 Cal.Rptr. 843].) Settlements can produce peace and goodwill in the community while reducing the expense and persistency of litigation. (*McClure* v. *McClure* (1893) 100 Cal. 339, 343 [34 P. 822].) In light of public policy, multiparty settlements will be presumed to be "global," i.e., a complete resolution of all claims, unless claims or rights of indemnification or contribution are expressly reserved by agreement. Accordingly, if Roberts and Mediquik intended to preserve their indemnification rights, they should have expressly done so from the outset of the settlement negotiations and when the settlement was placed on the record.

## DISPOSITION

The judgments are affirmed.

Huffman, Acting P. J., and Froehlich, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 2, 1992.